Douglass.
1 d373
111  333

## JOY *v.* THOMPSON.

A verbal promise made since, to pay a simple contract debt barred by the statute of limitations before the Revised Statutes of 1838 took effect, will not revive the cause of action, but such promise must be in writing as required by section 13, p. 578 of the Revised Statutes.

This construction of the statute does not give it the effect of violating the obligation of contracts.

THIS action was originally brought by Joy against Thompson, before a justice of the peace, February 24, 1843. The declaration was in assumpsit upon a promissory note made by the defendant May 1, 1822, and payable on the first day of October, in the same year. Pleas, non-assumpsit, and *actio non accrevit infra sex annos.* Replication, that the defendant did promise, &c. within six years. On the trial the plaintiff proved a verbal promise to pay the note, made by the defendant in June, 1842. The defendant contended that this was insufficient, and that since the Revised Statutes of 1838 took effect, the promise, in order to take a case out of the operation of the statute of limitations, must be in writing. The justice gave judgment for the defendant. Whereupon, the plaintiff removed the cause into Wayne Circuit Court by *certiorari*, and Justice WHIPPLE, then presiding in the Circuit Court, certified the case to this Court for its opinion upon the question arising therein.

*E. Taylor*, for the plaintiff.

*A. Harvie*, for the defendant.

GOODWIN, J. delivered the opinion of the Court.

The simple question presented by this case is, whether, since the Revised Statutes came into operation, a verbal promise will revive a cause of action upon simple con-

tract, previously barred by the statute of limitations. The determination of this question depends, mainly, upon the construction and effect to be given to the different sections of Chap. 2, Title 6, Part 3, of the Revised Statutes, entitled, "Of the limitations of personal actions," which took effect September 1, 1838.

It is a rule of interpretation, in construing statutes, that all the different parts are to be taken together, as well as other acts *in pari materia*, in ascertaining the intention of the legislature ; and that effect, if it can be done, is to be given to every part, so that no portion of it shall be left inoperative. And, in taking the different sections of this chapter, bearing on the question, I have had no difficulty in arriving at what was the intention of the legislature.

The 13th section, which is relied on by the plaintiff, provides that, "In actions of debt or upon the case, founded on any contract, no acknowledgment or promise shall be evidence of a new or continuing contract, whereby to take a case out of the operation of the provisions of this chapter, or to deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing, signed by the party to be charged thereby." R. S. 578. This is, in its language, broad and general. In the 27th section it is provided, that, when the cause or right of action shall have accrued prior to the time when the Revised Statutes were to take effect, " it shall not be affected by this chapter, but all such causes of action shall be determined agreeably to the law under which the right of action accrued." R. S. 580. This section, which is also very broad, it is contended, exempts previously existing causes of action from the operation of the before recited section, as well as the residue of this chapter.

The 25th section provides, that "No personal action shall be maintained which, at or before the day when this

chapter shall take effect as law, shall have been barred by the statute of limitation in force at any time before that day." R. S. 580. This provision, equally broad with the others in its terms, it is contended, prevents the revival of an action previously barred, by any new promise whatever, whether verbal or in writing. In conjunction with these should be taken into consideration the 3d section of the repealing act, (R. S. 697,) which provides that, when the limitation shall have begun to run, "and the same, or any similar limitation, is prescribed in the Revised Statutes, the time of limitation shall continue to run, and shall have the like effect, as if the whole period had begun and ended under the operation of the Revised Statutes." Taking these provisions thus far together, there would seem to be a conflict, especially between this last provision and the 27th section, above quoted. But there is another material section not yet quoted—the 24th —which is in these words: "None of the provisions of this chapter, respecting the acknowledgment of debt, or new promise to pay it, shall apply to any such acknowledgment or promise, made before the provisions of this chapter shall take effect as law; but every such last mentioned acknowledgment or promise, although not made in writing, shall have the same effect as if no provision relating thereto had been herein contained." R. S. 579. This section seems to me to be a key to the whole, and to show that it was the intention of the legislature in all these provisions, and that such is their true construction, that where causes of action had been barred by previously existing statutes, they should not be revived by their repeal, or a change in the Revised Statutes of the period of limitation; that, as to the period of limitation, they should be governed by the previously existing laws; and that, by the 13th and 24th sections, a new rule of evidence is furnished as to a new promise, which should prevent the

operation of the statute in reference to previous contracts, whether continuing or already barred, by which such contracts must be evidenced in writing, signed by the party to be charged.    If this is not the correct construction in this particular, then certainly there would be great reason for the position that the 25th section prevents the renewal of a cause of action, already barred, in any manner whatever; for, otherwise, the incongruous result would follow, that a cause of action upon which the statute had partly run, could be subsequently kept alive only by a promise in writing, while the older one, already barred, could be revived by a verbal one.    And yet I cannot conclude that the legislature intended to give so extensive an operation to the 25th section.    For, by the general law, a new promise or agreement to pay the old debt barred by the statute, constitutes a new contract, of which the old debt and the moral obligation to pay it, when not paid, make the consideration; and it could not have been intended to prevent such new contract.    To require that it, as well as any promise to continue an existing cause of action beyond the statutory period, should be in writing, appears to be what they designed.

The act of March 6th, 1843, (S. L. 1843, p. 43,) which has been alluded to, has not, that I can perceive, any distinct bearing on the question.    Its provisions are not stronger than that of the 27th chapter under consideration.    The 3d section, mentioned in it, of the act to repeal the acts consolidated in the Revised Statutes, refers only to causes of action upon which the statute had commenced running and had not fully run; and the chapter first mentioned in it, is that which prescribes the limitation of actions in respect to real estate.    Its language in one particular varies materially from that of the Revised Statutes; and this, with the history of the statutes of limitations, will show more fully its intent.    It provides that the sec-

tions referred to shall be so construed, that causes of action existing anterior to the Revised Statutes, "shall be governed and determined by the several statutes of limitations *theretofore in force applicable thereto.*" The 8th section of chapter 1, as well as the 27th section of chapter 2, provided that they should be governed by the law "under which the right of action accrued." The first statute of limitations was passed May 15th, 1820, and was prospective, embracing only future rights of action. This is the same found in the statutes of 1827 and 1833, and continued without change until the revision of 1838, except as directly mentioned. On November 5th, 1829, the Legislative Council passed an act, that real and possessory actions, for causes then existing, should be brought in ten years from that period, or be barred; and personal actions, for causes which accrued prior to May 16th, 1820, (when the general statute came into effect,) in four years from that period. These were manifestly to quiet all claims and demands prior to the limitation act of May, 1820, as well as to abridge the period for enforcing then existing claims to real estate, and thus to ensure repose in regard to both. By the Revised Statutes, this act was repealed by its title; and, by a literal construction of the language in the chapter referred to, "the law under which the right of action accrued," the causes of action anterior to May 16th, 1820, would be excluded, as well as all the others embraced in the act of November 5th, 1829; and thus a class of stale claims revived in respect to real estate, which, by the general scope and objects of the statute, were not designed to be revived.

The language of the declaratory act,—"the several statutes of limitations in this state theretofore in force in this state, applicable to," &c. would save this consequence. And such appears to me on the face of it to be its intent, as well as to remove the ambiguity created by the 3d sec-

tion of the act to repeal the acts revised and consolidated in the Revised Statutes, in reference to the period of limitation, where the pre-existing statute had partly and not entirely run, when the Revised Statutes took effect.

But it is insisted that the statute, thus construed, impairs the obligation of contracts; and the case of *Bronson* v. *Kinzie*, 1 Howard U. S. R. 311, is relied on to show that it cannot constitutionally have this effect.   Being, as I have stated, but a new and prospective rule of evidence, I cannot perceive how that case, or the constitutional provision urged, is applicable.   When the Revised Statutes took effect, this note, being barred, had no legal obligation. The legal remedy was gone; and, if any obligation remained, it was only *in foro conscientiæ*.   It could only thereafter have legal force and effect by a new contract or promise, of which it might be the consideration.   Thus only could any legal obligation be revived in respect to it. The legislature, then, only provided that this new future contract, or promise, should be evidenced by writing, as in several cases of contracts embraced in the statute of frauds.   No existing legal right is affected, or legal obligation impaired.   We are, then, of opinion that the judgment below should be affirmed, and that it should so be certified to the Circuit Court for the county of Wayne.

*Judgment affirmed.*