Nancy Gavett *vs.* Manchester and Lawrence Railroad Company.

In an action to recover for personal injuries, if the facts are undisputed, and fail to show that the plaintiff was in the exercise of due and reasonable care at the time of receiving the injuries, it is the duty of the court to instruct the jury that he cannot recover.

A passenger in a railroad car, who, knowing that the train is in motion, goes out of the car and steps upon the platform of the station while the train is still in motion, is so wanting in ordinary care as not to be entitled to maintain an action against the railroad corporation for an injury resulting therefrom.

Action of tort for personal injuries suffered by reason of the negligence of the defendants.

At the trial before *Merrick,* J., it appeared that the plaintiff was a widow nearly seventy years of age, but in excellent health, a remarkably good walker, and a person of extraordinary activity, both mental and physical, for one of her age, who had resided in Boston for twenty five years, and had friends in Salem, N. H., whom she had for years been accustomed to visit

alone during the summer; that, for the purpose of visiting them, on the 27th of July 1858, she went from her home in Boston, accompanied by her son, to the Boston and Maine Railroad station, where a ticket for Salem was purchased of the defendants and paid for, and she was placed by her son on the left side near the window of the second car from the engine.

The plaintiff testified : " The station at Salem is on the right-hand side. I knew when I arrived at Salem by my observation and by the conductor speaking. The conductor called out at the door in front of me. I soon got ready to leave the car. I had a carpet-bag and parasol. A lady sat at my right hand, with a babe in her arms. No delay but for the lady to move. While I was advancing to the door, the cars appeared to be in motion. I got hold of the ring to hold on. I thought the cars were going to stop instead of starting to go on. A gentleman, who asked me why I did not get there sooner, stood directly in front. I told him I came as quick as I could. It appeared as if there was a jerk, and I was thrown like one in the air." On cross-examination she testified : " I walked perfectly. The cars appeared to be in motion when I went to the door. The cars were in motion all the time. When I got to the door, the cars were in motion. When I got to the door, a man said, Why did you not come sooner? The cars were then in motion."

A witness, who was near the cars on the opposite side to that upon which the plaintiff attempted to get out, testified as follows : " I saw the plaintiff come out of the cars, step down the steps and step upon the platform. I saw her as she came out, in the cars. As soon as she stepped on the platform, it gave her a whirl and threw her between the platform and the cars. The cars stopped; I should not think more than half a minute after they came to a dead stop. When they stopped, the hind end of the rear car was opposite the station. The cars had started when she got out; they were in motion when she got upon the platform, when she fell. The cars had advanced the length of half or two thirds of a car, and she fell a little below the centre of the station. I saw the conductor before the accident on the platform of the station. I saw him on

the platform when he got upon the rear end of front car. I did did not see them there together. The conductor had gone into the front car before the plaintiff came out; they were not there together. The cars were in motion as she came out of the door. I heard no one speak to her."

Two other witnesses, who were standing by the station on the side on which the plaintiff attempted to get out, testified that the cars stopped for about half a minute; that the conductor stood on the platform, made a motion to the engineer to go on his way, and stepped upon the hind steps of the forward car; and just after he stepped upon the steps, the plaintiff came out of the car, and undertook to step upon the platform and was thrown.

Upon this evidence, the defendants contended that the action could not be maintained; and the presiding judge, being of that opinion, directed the jury to find a verdict for the defendants, subject to the opinion of the whole court.

*J. W. May,* for the plaintiff. Negligence of a plaintiff, as well as of a defendant, is not a question of law for the court, but a question of fact for the jury, to be determined upon all the circumstances of the case. *Bigelow* v. *Rutland,* 4 Cush. 247. *Bradley* v. *Boston & Maine Railroad,* 2 Cush. 539. *Munroe* v. *Leach,* 7 Met. 274. *Hall* v. *Lowell,* 10 Cush. 260. *Providence* v. *Clapp,* 17 How. 161. *Paterson* v. *Wallace,* 1 Macq. 748. *Aldridge* v. *Great Western Railway,* 4 Scott N. R. 164. *Coombs* v. *Purrington,* 42 Maine, 332. *Foster* v. *Dixfield,* 18 Maine, 380. *Carlton* v. *Bath,* 2 Foster, 559. *Leicester* v. *Pittsford,* 6 Verm. 245 & cases cited. *Beers* v. *Housatonic Railroad,* 19 Conn. 566. *Park* v. *O'Brien,* 23 Conn. 339. *Hegeman* v. *Western Railroad,* 3 Kernan, 9. *Johnson* v. *Hudson River Railroad,* 6 Duer, 645. *Curtiss* v. *Rochester & Syracuse Railroad,* 20 Barb. 282. *Dougherty* v. *Stephenson,* 20 Penn. State R. 210. Negligence is a variable question, and changes with the time, place and circumstances, so that what is negligence at one time and place is prudence at another. Story on Bailments, §§ 11, 12. It is an act of the mind, and therefore outward acts cannot themselves constitute

negligence, but are only indications of it. It is therefore a fact, the existence of which is to be deduced from the existence of other facts, and is exclusively within the province of the jury. 1 Greenl. Ev. § 48. If the court can direct a verdict for the defendant in a case like this, it may also direct a verdict for the plaintiff, leaving only the damages to be assessed by the jury.

Upon the facts proved and the possible deductions therefrom, the plaintiff was not guilty of negligence; she was an old lady, rightfully on the train as a passenger, and not only rightfully attempting to leave it at Salem, but bound to do so. With the utmost diligence she was able only to get to the door of the car before the train started; and rightfully supposing that the train was going to stop, she took hold of the ring to hold on, and while so holding on in readiness to step upon the platform, the train started with a jerk, by which she was thrown down. As she came out of the door she was asked by a man in front of her, who, if not the conductor, was undoubtedly some servant of the company, " Why did not you come sooner ? " which she could not have interpreted as a notice to stop, but might well have regarded as a request to hurry.

If the plaintiff was negligent, her negligence was of such a character as not to preclude her from recovering. The evidence tends to show that she was confused and had no opportunity to reflect, or for the exercise of discretion, or to deliberate whether there was danger, but was compelled to act on the impulse of the moment. If this lack of self-possession was brought about by the defendants' negligence, they cannot take advantage of it. *Chaplin* v. *Hawes*, 3 Car. & P. 554. *Lynch* v. *Nurdin*, 1 Ad. & El. N. R. 29. *Ingalls* v. *Bills*, 9 Met. 1. *Stokes* v. *Saltonstall*, 13 Pet. 181. *Robinson* v. *Cone*, 22 Verm. 213. *Birge* v. *Gardiner*, 19 Conn. 507. In *Lucas* v. *New Bedford & Taunton Railroad*, 6 Gray, 64, the plaintiff had no right to be in the cars.

If upon the facts proved and the inferences to be drawn therefrom reasonable men might by possibility differ in respect to the plaintiff's claim, she is entitled to have it decided by the jury. *Paterson* v. *Wallace*, 1 Macq. 748.

*B. F. Thomas,* for the defendants, cited *Munroe* v. *Leach,* 7 Met. 274; *Davis* v. *Maxwell,* 12 Met. 286; *Drake* v. *Lowell,* 13 Met. 292; *Vinal* v. *Dorchester,* 7 Gray, 421; *Rowell* v. *Lowell,* 7 Gray, 100; *Kidder* v. *Dunstable,* 7 Gray, 104; *Hixon* v. *Lowell,* 13 Gray, 59; *Lucas* v. *New Bedford & Taunton Railroad,* 6 Gray, 64; *Railroad Co.* v. *Skinner,* 19 Penn. State R. 298; *Railroad Co.* v. *Aspell,* 23 Penn. State R. 147; *Damont* v. *New Orleans & Carrollton Railroad,* 9 Louisiana Annual, 441; *Galena & Chicago Union Railroad* v. *Yarwood,* 15 Ill. 468; *Moore* v. *Central Railroad,* 4 Zabr. 268, 824; *Trow* v. *Vermont Central Railroad,* 24 Verm. 487; *Haring* v. *New York & Erie Railroad,* 13 Barb. 9; *Willett* v. *Buffalo & Rochester Railroad,* 14 Barb. 585; *Sheffield* v. *Rochester & Syracuse Railroad,* 21 Barb. 339; *Dascomb* v. *Buffalo & State Line Railroad,* 27 Barb. 221; *Mackey* v. *New York Central Railroad,* 27 Barb. 528; Redfield on Railways, 335, 336.

BIGELOW, C. J. The line which marks and separates the respective duties and functions of the court and jury is certain and well defined. The difficulty arises in determining on which side of this line particular cases fall; that is, in deciding whether a case presents only a question of law, or involves an inquiry into facts and the inferences deducible from them. Certainly the court in all cases should be scrupulously careful not to invade the province of the jury by undertaking to decide on the weight or effect of evidence, or by refusing to submit to their consideration any question of fact, material to the issue, which may be in dispute between the parties. On the other hand, it is the clear duty of the court to decide on the legal effect of the evidence, and to say whether it is such as to entitle a party to a verdict; otherwise, the jury might be called on to decide a pure question of law. It may be said generally that it is the duty of the judge to decide whether there is any evidence; of the jury to determine upon its sufficiency. This may be illustrated by an example. Suppose the facts of a case were stated in the form of a special verdict in favor of a plaintiff. This would be supported if the facts so found comprehended all the material averments necessary to maintain the

action. But if upon them, with all possible inferences which reasonable men might draw therefrom, there was an absence of an essential element which it was incumbent on the plaintiff to establish, there can be no doubt it would be the plain duty of the court to say, as a matter of law, that he had failed to maintain his action. In like manner, when the evidence offered by a party wholly fails to prove a material allegation, it is the province of the court to decide that no case is proved which can in law support a finding in his favor. In such case, the testimony furnishes nothing for the consideration of the jury, and it is as much the duty of the court to determine that there is no evidence to sustain the action, as to exclude evidence on the ground of its irrelevancy. If however there is a dispute about the facts, or the credibility of witnesses is drawn in question, or a material fact is left in doubt by the testimony, or there are inferences to be drawn from the facts in proof, then it would be proper to submit the case to the consideration and determination of a jury. *Company of Carpenters* v. *Hayward*, 1 Doug. 374. *Mitchell* v. *Williams*, 11 M. & W. 216. *Doyle* v. *Wragg*, 1 Fost. & Finl. 7. *Stormont* v. *Waterloo Life & Casualty Assurance Co.* 1 Fost. & Finl. 22. *Sawyer* v. *Nichols*, 40 Maine, 216. ·

In the case at bar, there is no dispute about any of the material facts upon which the plaintiff rests her claim to damages. If there is any discrepancy in the statements of the witnesses, the points of difference do not change in any degree the legal aspect of the case. The plaintiff not only failed to offer any evidence of ordinary care on her part at the time of the occurrence of the accident, but it appears on the estimony adduced by her in support of her case, that she was guilty of negligence, which contributed to produce the injury of which she complains. One of two facts is established by the proof. After the train had started and was in motion, the plaintiff either passed out of the door and was on the platform of the car for the purpose of attempting to leave it, or she actually stepped from the platform of the car upon that in front of the station. While thus situated, she was thrown down and

injured. It was therefore her attempt to leave the train, after it was in motion, that directly tended to bring about the casualty which occurred. Now it cannot be doubted that the well known hazards of transportation on railroads, and the unprotected and exposed situation of persons standing on the platform of the car or attempting to leave it when the train is about to start or is actually in motion, render it unsafe for passengers to place themselves in such a situation, and preclude the idea that due care can be exercised under such circumstances. In the absence of anything to create excitement or cause alarm, the attempt to leave a car, while the train is in motion, by passing to the outside or stepping off, is *prima facie* evidence of carelessness. So it was decided to be by the court in *Lucas* v. *New Bedford & Taunton Railroad*, 6 Gray, 64, in which it was held that the plaintiff was wanting in ordinary care in attempting to leave the cars when they were in motion.

But it is urged in behalf of the plaintiff that the case at bar is distinguishable from the case just cited, because in that case the plaintiff at the time of the accident had no right to be in the cars, whereas in the case at bar the plaintiff was a passenger and was lawfully attempting to leave the train when she received the injury. The facts are so ; but we do not see that they at all affect the principle applicable to this case. There is no evidence that anything happened which ought to have excited the plaintiff, or that she was placed in circumstances which occasioned her any alarm, or disturbed her thoughts or distracted her attention. She knew that the cars were in motion, and persisted notwithstanding in her efforts to leave the train. If she had remained in the car she would have been exposed to no danger. But in trying to get off after the train was in motion, she took the risk on herself of the consequences which might follow from such an act of carelessness.

It was also urged by the counsel for the plaintiff that the fact of negligence is of such a complex nature that it cannot in any case be passed on by the court, but must necessarily be submitted to the jury for their determination. But we are unable to see any foundation for such an argument. If due

care is susceptible of being established by proof, surely there can be no difficulty in determining whether there is an absence of any proof to establish it. The argument proves too much; because, if well founded, there is no case in which the court could decide the question. But this is not so. Suppose a man riding in a car thrusts his arm out of the window, so that it comes in contact with a post erected to support a bridge ; or, when the cars are in motion at a rate exceeding twenty miles an hour, without any cause for alarm, recklessly jumps from the train. In such cases, it could not be said that there was any proof of due care to be passed on by the jury, and it would be an idle ceremony to go through the form of submitting the case to their consideration. So in the present case, the plaintiff attempted to leave the car while the train was in motion. This is conceded. There was therefore no proof of due care, and no facts were shown from which any inference of such care could by possibility be drawn by reasonable men, which would support a verdict for the plaintiff. *Judgment on the verdict.*